This instrument prepared by and to be returned to:

Terry J. Matthews
SunTrust Bank
Exceptions Department
P.O. Box 26202
Richmond, VA 23260-6202

INSTR # 105072538
OR BK 39807 Pages 1227 - 1241
RECORDED 06/08/05 15:50:48
BROWARD COUNTY COMMISSION
DOC STMP-M: $2428.30
INT TAX: f1 $1387.50
DEPUTY CLERK 1923
#2, 15 Pages

Florida documentary stamp tax required by law in the amount of $2,428.30 has been paid or will be paid directly to the Department of Revenue. Certificate of Registration No. 580466330.

# SUNTRUST

## Commercial Mortgage and Security Agreement
### Florida

THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $540,355.18, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

This Mortgage and Security Agreement (hereinafter referred to as this "Mortgage") is made and entered into as of May 31, 2005 by and between West Broward Church of God, Inc., Fee Simple, (hereinafter referred to as "Mortgagor") and SunTrust Bank, its present and future affiliates and their successors and assigns (hereinafter referred to as "Lender") in order to secure the indebtedness of West Broward Church of God, Inc. (hereinafter referred to as "Obligor") in the amount of $693,750.00 on a debt, note or other obligation dated May 31, 2005 (which indebtedness is hereinafter referred to as the "Note"). If Mortgagor and Obligor are not one and the same person or persons, the term "Mortgagor" shall refer to both the Mortgagor and the Obligor as the context may allow.

Witnesseth, that in consideration of the premises and in order to secure the payment of both the principal of, and interest and any other sums payable on the Note as defined herein or this Mortgage and the performance and observance of all of the provisions hereof and of said Note, Mortgagor hereby grants, sells, warrants, conveys, assigns, transfers, mortgages and sets over and confirms unto Lender, all of Mortgagor's estate, right, title and interest in, to and under all that certain real property situate in Broward County, Florida, known as 4760 North State Road 7, Lauderdale Lakes, FL 33319 and more particularly described in Exhibit A, attached hereto and made a part hereof by reference.

THIS IS NOT THE HOMESTEAD PROPERTY OF MORTGAGOR.

Together with all improvements now or hereafter located on said real property and all fixtures, appliances, apparatus, equipment, furnishings, heating and air conditioning equipment, machinery and articles of personal property and replacement thereof (other than those owned by lessees of said real property) now or hereafter affixed to, attached to, placed upon, or used in any way in connection with the complete and comfortable use, occupancy, or operation of the said real property, all licenses and permits used or required in connection with the use of said real property, all leases and sales contracts of said real property now or hereafter entered into and all right, title and interest of Mortgagor thereunder, including without limitation, cash or securities deposited thereunder pursuant to said leases or sales contracts, and all rents, issues, proceeds, and profits accruing from said real property and together with all proceeds of the conversion, voluntary or involuntary of any of the foregoing into cash or liquidated claims, including without limitation, proceeds of insurance and condemnation awards (the foregoing said real property, tangible and intangible personal property hereinafter referred to collectively as the "Mortgaged Property"). Mortgagor hereby grants to Lender a security interest in the foregoing described tangible and intangible personal property.

To have and to hold the Mortgaged Property, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining and the reversion and reversions thereof and all the estate, right, title, interest, homestead, dower and right of dower, separate estate, possession, claim and demand whatsoever, as well in law as in equity, of Mortgagor and unto the same, and every part thereof, with the appurtenances of Mortgagor in and to the same, and every part and parcel thereof unto Lender.

Copies: 0
Distribution: Original – Filed in Land Records
830361 (05/05)
For Real Estate located in Florida





Page 1 of 11

EXHIBIT
B



This Mortgage secures, in addition to the indebtedness evidenced by the Note, (a) all advances made by Lender to protect or preserve the Premises or the lien hereof on the Premises, or to pay taxes or premiums for insurance on the Premises, or to repair or maintain the Premises, or to complete improvements on the Premises (whether or not the original Mortgagor remains the owner of the Premises at the time of such advances), (b) all payments and other obligations owing by any Obligor under any loan agreement, guaranty, security or pledge agreement, assignment or other agreement executed in connection with the Note, (c) the liabilities, obligations, agreements and undertakings of Obligor to Lender pursuant to any foreign exchange contract or any interest rate hedge agreement or other derivative transaction document related to the Note, (d) all other and future indebtedness which is now or may hereafter be owed by any Mortgagor to Lender, whether individually or jointly with others not parties hereto, and whether direct or indirect, absolute or contingent, as maker, endorser, guarantor, surety, or otherwise, (e) all extensions, renewals, modifications and refinancings of the Note and the indebtedness and other obligations described in the preceding clauses (a) through (d), and (f) all costs of collection, including attorneys' fees.

If the Note evidences a revolving credit loan, the principal amount of which may be advanced, repaid and re-advanced in accordance with the terms of the Note, then notwithstanding the reduction to a zero ($0) balance of the outstanding principal amount of the Note, the lien and security title of this Mortgage shall not be released or extinguished by operation of law or the implied intent of the parties, and this Mortgage and the Note shall remain in full force and effect as to any subsequent advances under the Note made after any such zero balance until all indebtedness secured by this Mortgage is paid in full and satisfied, all agreements of Lender to make additional advances have been terminated, and this Mortgage has been canceled of record.

Should the indebtedness secured by this Mortgage be paid according to the tenor and effect thereof when the same shall become due and payable, and should Mortgagor perform all covenants herein contained in a timely manner, then this Mortgage shall be canceled and surrendered.

Future Advances. This Mortgage shall secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or are to be made at the option of Lender or otherwise, as are made within twenty (20) years from the date hereof to the same extent as if such future advances were made on the date of the execution of this Mortgage, but such secured indebtedness shall not exceed at any time the maximum principal amount of $1,387,500.00, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the mortgage Property with interest on such disbursements. Any such future advances, whether obligatory or to be made at the option of Lender or otherwise, may be made either prior to or after the due dates of the Note(s) secured by this Mortgage. This Mortgage is given for the specific purpose of securing any and all indebtedness by the Obligor and Mortgagor to Lender (but in no event shall the secured indebtedness exceed at any time the maximum principal amount set forth in this paragraph) in whatever manner this indebtedness may be evidenced or represented until this Mortgage is satisfied of record. All covenants and agreements contained in this Mortgage shall be applicable to all further advances made by Lender to Obligor or Mortgagor under this future advance clause.

Mortgagor hereby further covenants and agrees with Lender as follows:

ARTICLE I

1.01. **Payment of Indebtedness.** The Note shall be paid according to the tenor thereof and all other sums now or hereafter secured hereby promptly as the same shall become due.

1.02. **Taxes, Liens and Other Charges.** (a) In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of debts secured by deeds to secure debt or the manner of collecting taxes so as to adversely affect Lender or if it is determined that tax or additional tax is due on the underlying note or this Mortgage, Mortgagor shall promptly pay any such tax. If Mortgagor fails to make such prompt payment or if, in the opinion of Lender, any such state, federal, municipal, or other governmental law, order, rule or regulation prohibits Mortgagor from making such payment or would penalize Lender if Mortgagor makes such payment or if, in the opinion of Lender, the making of such payment might result in the imposition of interest beyond the maximum amount permitted by applicable law, then the indebtedness secured by this Mortgage shall, at the option of Lender, become immediately due and payable. (b) Mortgagor shall pay promptly, or cause to be paid promptly, before the same become delinquent, all taxes, liens, assessments and charges of every character including all utility charges, whether public or private, levied or assessed upon or against the Premises; and upon demand shall furnish Lender receipted bills evidencing such payment. (c) Mortgagor shall not suffer any mechanic's, materialman's, laborer's, statutory or any other lien to be created and to remain outstanding upon all or any part of the Premises for longer than 10 days.

1.03. **Insurance.** (a) Mortgagor shall procure for, deliver to and maintain for, or cause to be procured for the benefit of Lender during the term of this Mortgage, original paid up insurance policies of insurance companies acceptable to Lender and in amounts, form and substance and with expiration dates acceptable to Lender and containing non-contributory standard mortgage clauses or their equivalent or a satisfactory lender loss payable endorsement in favor of Lender, and waiver of subrogation clauses, providing the following types of insurance on the Premises: (i) insurance against loss or damage by fire, lightning, vandalism and malicious mischief and against such other hazards as are presently included in so-called "extended coverage" and against such other insurable hazards as, under good insurance practices, from time to time are insured against for properties of similar character and location; the amount

of which insurance shall be not less than the balance of the Indebtedness evidenced by the Note nor less than one hundred percent (100%) of the full replacement cost of the Premises without deduction for depreciation; and which policies of insurance shall contain satisfactory replacement cost endorsements; (ii) such other insurance on the Premises or any replacements or substitutions therefor and in such amounts as may from time to time be reasonably required by Lender against other insurable-casualties which at the time are commonly insured against for similar premises. (b) Lender is hereby authorized and empowered, at its option, to adjust or compromise any loss under any insurance policies maintained pursuant hereto, and to collect and receive the proceeds from any policy or policies. Each insurance company is hereby authorized and directed to make payment for all such losses directly to Lender, instead of to Mortgagor and Lender jointly. In the event any insurance company fails to disburse directly and solely to Lender but disburses instead either solely to Mortgagor or to Mortgagor and Lender jointly, Mortgagor agrees immediately to endorse and transfer such proceeds to Lender. Upon the failure of Mortgagor to endorse and transfer such proceeds as aforesaid, Lender may execute such endorsements or transfer for and in the name of Mortgagor and Mortgagor hereby irrevocably appoints Lender as Mortgagor's agent and attorney-in-fact so to do. After deducting from said insurance proceeds all of its expenses incurred in the collection and administration of such sums, including attorney's fees, Lender may apply the net proceeds or any part thereof in its sole discretion, (i) to the payment of the Indebtedness hereby secured, whether or not due and in whatever order Lender elects, together with any prepayment premiums, fees, or charges herein or in the Note provided, (ii) to the repair and/or restoration of the Premises or (iii) for any other purposes or objects for which Lender is entitled to advance funds under this Mortgage; all without affecting the lien of this Mortgage or any obligation secured hereby; and any balance of such proceeds then remaining shall be paid to Mortgagor. Lender shall not be held responsible for any failure to collect any insurance proceeds due under the terms of any policy regardless of the cause of such failure. Lender may require Mortgagor to deposit with Lender such additional sum or sums as may be required in order for Lender to pay taxes and assessments and insurance premiums in full. Upon any default in the provisions of this Mortgage or the Note, Lender may, at its option, apply any money in the fund resulting from said deposits to the payment of the indebtedness secured hereby in such manner as it may elect.

**1.04. Condemnation.** If all or any portion of the Premises shall be damaged or taken through condemnation (which term when used in this Mortgage shall include any damage or taking by any governmental authority and any transfer by private sale in lieu thereof), either temporarily or permanently, then the entire indebtedness secured hereby shall, at the option of Lender, become immediately due and payable, without notice to Mortgagor or any other person or entity, or at Lender's further option, Lender may require Mortgagor to apply all compensation, awards, proceeds, or other payments from such condemnation to the restoration and repair of the Premises as may be necessary to cure the injury to the Premises occasioned by such condemnation. Lender shall be entitled to receive all compensation, awards, proceeds, and other payments or relief relating to or payable as a result of such condemnation. Lender is hereby authorized, at its option, to commence, appear in and prosecute, in its own or in Mortgagor's name, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith. All such compensation, awards, damages, claims, rights of action and proceeds and the right thereto are hereby assigned by Mortgagor to Lender. After deducting from said condemnation proceeds all of its expenses incurred in the collection and administration of such sums, including attorneys' fees, Lender may apply the net proceeds or any part thereof, at its option, (a) to the payment of the indebtedness hereby secured, whether or not due and in whatever order Lender elects, together with any prepayment premiums, fees, or charges herein or in the Note provided, (b) to the repair and/or restoration of the Premises or (c) for any other purposes or objects for which Lender is entitled to advance funds under this Mortgage, all without affecting the lien of this Mortgage; and any balance of such monies than remaining shall be paid to Mortgagor. Mortgagor agrees to execute such further assignment of any compensation, awards, damages, claims, rights of action and proceeds as Lender may require.

**1.05. Care of Premises.** Mortgagor shall keep the buildings, parking areas, roads and walkways, recreational facilities, landscaping and all other improvements of any kind now or hereafter erected on the Land or any part thereof in good condition and repair, shall not commit or suffer any waste and shall not do or suffer to be done anything which will increase the risk of fire or other hazard to the Premises or any part thereof. If the Premises or any part thereof is damaged by fire or any other cause, Mortgagor shall give immediate written notice thereof to Lender. Lender or its representative is hereby authorized to enter upon and inspect the Premises at any time during normal business hours. Mortgagor shall promptly comply with all present and future laws, ordinances, rules and regulations of any governmental authority affecting the Premises or any part thereof. If all or any part of the Premises shall be damaged by fire or other casualty, Mortgagor shall promptly restore the Premises to the equivalent of its original condition; and if a part of the Premises shall be damaged through condemnation, Mortgagor shall promptly restore, repair or alter the remaining portions of the Premises in a manner satisfactory to Lender. Mortgagor shall not be obligated to so restore unless in each instance, Lender agrees to make available to Mortgagor (pursuant to a procedure satisfactory to Lender) any net insurance or condemnation proceeds actually received by Lender hereunder in connection with such casualty loss or condemnation, to the extent such proceeds are required to defray the expenses of such restoration; provided, however, that the insufficiency of any such insurance or condemnation proceeds to defray the entire expense of restoration shall in no way relieve Mortgagor of its obligation to restore. In the event all or any portion of the Premises shall be damaged or destroyed by fire or other casualty or by

condemnation, Mortgagor shall promptly deposit with Lender a sum equal to the amount by which the estimated cost of the restoration of the Premises (as determined by Lender in its good faith judgment) exceeds the actual net insurance or condemnation proceeds received by Lender in connection with such damage or destruction.

**1.06. Security Agreement.** Insofar as the machinery, apparatus, equipment, fittings, fixtures, building supplies and materials, and articles of personal property either, referred to or described in this Mortgage, or in any way connected with the use and enjoyment of the Premises is concerned, this Mortgage is hereby made and declared to be a security agreement, and Mortgagor grants a security interest in each and every item of personal property described herein, in compliance with the provisions of the Uniform Commercial Code as enacted in the State of Georgia. Mortgagor will execute and allow or cause to be filed of record, such financing statements, fixture notice filings, and other documents and instruments as Lender may request in order to properly perfect the Lender's security interest in such personal property. The remedies for any violation of the covenants, terms and conditions of the security agreement herein contained shall be (i) as prescribed herein, or (ii) as prescribed by general law, or (iii) as prescribed by the specific statutory consequences now or hereafter enacted as specified in said Uniform Commercial Code, all at Lender's sole election. Mortgagor and Lender agree that the filing of any financing statement(s) in the records normally having to do with personal property shall never be construed as in anywise derogating from or impairing this declaration and hereby stated intention of Mortgagor and Lender that everything used in connection with the production of income from the Premises and/or adapted for use therein and/or which is described or reflected in this Mortgage, is, and at all times and for all purposes and in all proceedings both legal and equitable shall be, regarded as part of the real estate irrespective of whether (a) any such item is physically attached to the improvements, (b) serial numbers are used for the better identification of certain items capable of being thus identified in a recital contained herein, or (c) any such item is referred to or reflected in any such financing statement(s) so filed at any time.

Mortgagor further covenants and agrees that all of the aforementioned personal property shall be owned by Mortgagor and, except as disclosed to and approved by Lender in writing, shall not be the subject matter of any lease or other instrument, agreement or transaction whereby the ownership or beneficial interest thereof or therein shall be held by any person or entity other than Mortgagor; nor shall Mortgagor create or cause to be created any security interest covering any such property, other than (i) the security interest created herein in favor of Lender and (ii) the rights of tenants lawfully occupying the Premises.

**1.07. Further Assurance; After Acquired Property.** At any time, and from time to time, upon request by Lender, Mortgagor shall make, execute and deliver or cause to be made, executed and delivered, to Lender and, where appropriate, cause to be recorded and/or filed and from time to time thereafter to be re-recorded and/or refiled at such time and in such offices and places as shall be deemed desirable by Lender, any and all such other and further mortgages, security agreements, financing statements, continuation statements, instruments of further assurances, certificates and other documents as may, in the opinion of Lender, be necessary or desirable in order to effectuate, complete, or perfect or to continue and preserve (a) the obligations described in the Note and under this Mortgage and (b) the priority of the lien of this Mortgage upon and security title in and to all of the Premises, whether now owned or hereafter acquired by Mortgagor. Upon any failure by Mortgagor to do so Lender may make, execute, record, file, re-record and/or refile any and all such mortgages, security agreements, financing statements, continuation statements, instruments, certificates, and documents for and in the name of Mortgagor and Mortgagor hereby irrevocably appoints Lender the agent and attorney-in-fact of Mortgagor so to do. The lien hereof shall automatically attach, without further act, to all after acquired property attached to and/or used in the operation of the premise or any part thereof.

**1.08. Expenses.** Mortgagor shall pay or reimburse Lender, upon demand therefor, for all attorneys' fees, costs and expenses incurred by Lender in any suit, action, legal proceeding or dispute of any kind in which Lender is made a party or appears as party plaintiff or defendant, affecting the indebtedness secured hereby, this Mortgage or the interest created herein, or the Premises, including, but not limited to, the exercise of the power contained in this Mortgage, any condemnation action involving the Premises or any action to protect the security hereof; and any such amounts paid by Lender shall be added to the indebtedness secured by the lien of this Mortgage.

**1.09. Subrogation.** Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the indebtedness secured hereby or otherwise discharged or paid by Lender. Mortgagor waives all rights of subrogation until all obligations secured hereby are paid in full.

**1.10. Transfer of the Premises.** Mortgagor shall not sell, transfer, pledge, encumber, create a security interest in, or otherwise hypothecate all or any part of the Premises without Lender's prior written consent. The consent by Lender to any sale, transfer, pledge, encumbrance, creation of a security interest in, or other hypothecation of the Premises shall not be deemed to constitute a novation or a consent to any further sale, transfer, pledge, encumbrance, creation of a security interest in, or other hypothecation or to waive Lender's right, at its option, to declare the indebtedness secured hereby immediately due and payable, without notice to Mortgagor or any other person or entity, upon any such sale, transfer, pledge, encumbrance, creation of a security interest, or other hypothecation to which it shall not have consented.

**1.11. Limit of Validity.** If from any circumstances whatsoever fulfillment of any provision of this Mortgage or of the Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any application usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Mortgage or under the Note that is in excess of the applicable limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this Paragraph 1.11 shall control every other provision of this Mortgage and the Note.

## ARTICLE II

**2.01. Events of Default.** The terms "Default," "Defaults," "Event of Default" or "Events of Default," wherever used in this Mortgage, shall mean any one or more of the following events: (a) Failure to pay as and when due and payable any installment of principal or interest secured by this Mortgage as and when due; or (b) Failure by Mortgagor to duly observe or perform any term, covenant, condition or agreement of this Mortgage or the Note; or (c) Any representation or warranty of Mortgagor contained in this Mortgage or of any Obligor in any other instrument, document, transfer, conveyance, assignment or loan agreement given by any Obligor with respect to the indebtedness secured hereby, proves to be untrue or misleading in any material respect to; or (d) Any sale, transfer, pledge, encumbrance, creation of a security interest in, or other hypothecation of all or any part of the Premises to which Lender shall not have first consented in writing; or (e) The filing of any federal or state tax lien or judgment lien against the Premises; or (f) The filing by an Obligor of a voluntary petition in bankruptcy or the adjudication of an Obligor as a bankrupt or insolvent, or the filing by or against an Obligor of any petition seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or an Obligor's seeking or consenting to or acquiescing in the appointment of any trustee, receiver or liquidator of an Obligor or of substantially all of an Obligor's property or of any or all of the rents, issues, profits or revenues thereof, or the making by an Obligor of any general assignment for the benefit of creditors, or the admission in writing by an Obligor of its inability to pay its debts generally as they become due; or (g) The entry by a court of competent jurisdiction of an order, judgment or decree approving a petition filed against an Obligor seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or the appointment of any trustee, receiver or liquidator of an Obligor or of substantially all of an Obligor's property or of any or all of the rents, issues, profits or revenues thereof without the consent or acquiescence of an Obligor; or (h) The filing by any person or entity of any claim in any legal or equitable proceeding challenging the validity or priority of the lien of this Mortgage; or (i) If any fact shall occur or condition shall exist pursuant to the terms of any other deed to secure debt, mortgage, or another instrument imposing a lien on the Premises or any portion thereof (whether such lien is senior or junior to the security title and lien granted by this Mortgage) the occurrence or existence of which causes, or allows the holder of any obligation secured thereby to cause, any obligation secured thereby to become due prior to its maturity or prior to its regularly scheduled dates of payment, or if any such obligation is not otherwise paid when due.

**2.02. Acceleration of Maturity.** If an Event of Default shall have occurred and be continuing, then the entire indebtedness secured hereby shall, at the option of Lender, immediately become due and payable without notice or demand, which are hereby expressly waived, time being of the essence of this Mortgage, and no omission on the part of Lender to exercise such option when entitled to do so shall be construed as a waiver of such right; provided, however, upon the occurrence of any Event of Default set forth above in Section 2.01 (f) or (g), any indebtedness secured hereby shall automatically and simultaneously therewith become due and payable without notice or demand.

**2.03. Lender's Right to Enter and Take Possession, Operate and Apply Revenues.** If default be made in payment, when due, of any indebtedness secured hereby, or in performance of any of Mortgagor's obligations, covenants or agreement hereunder or under any other Loan Document: (a) Lender is authorized at any time, without notice, in its sole discretion to enter upon and take possession of the Mortgaged Property or any part thereof, to perform any acts Lender deems necessary or proper to conserve the security and to collect and receive all rents, issues and profits thereof, including those past due as well as those accruing thereafter; (b) Lender shall be entitled, as a matter of strict right, without notice and ex parte, and without regard to the value or occupancy of the security, or the solvency of Mortgagor, or the adequacy of the Mortgaged Property as security for the Note, to have a receiver appointed to enter upon and take possession of the Mortgaged Property, collect the rents and profits therefrom and apply the same as the court may direct, such receiver to have all the rights and powers permitted under the laws of Florida.

In either such case, Lender or the receiver may also take possession of, and for these purposes use, any and all personal property which is a part of the Mortgaged Property and used by Mortgagor in the rental or leasing thereof or any part thereof. The expense (including receiver's fees, counsel fees, costs and agent's compensation) incurred pursuant to the powers herein contained shall be secured hereby. Lender shall (after payment of all costs and expenses incurred) apply such rents, issues and profits received by it on the indebtedness secured hereby in such order as Lender determines. The right to enter and take possession of the Mortgaged Property, to manage and operate the same, and to collect the rents, issues and profits thereof, whether by a receiver or otherwise, shall be

cumulative to any other right or remedy hereunder or afforded by law, and may be exercised concurrently therewith or independently thereof. If Lender obtains possession of rents, issues or profits either as receiver or otherwise, Lender shall be liable to account only for such rents, issues and profits actually received, waived or compromised by Lender and all expenses incurred in connection with such receivership. (c) For the purpose of carrying out the provisions of this Paragraph 2.03, Grantor hereby irrevocably constitutes and appoints Grantee the true and lawful attorney-in-fact of Grantor to do and perform, from time to time, any and all actions necessary and incidental to such purpose and does, by these presents, ratify and confirm any and all action of said attorney-in-fact in the Premises. This power of attorney is coupled with an interest.

**2.04. Performance by Lender of Defaults by Mortgagor.** If Mortgagor shall default in the payment, performance or observance of any term, covenant or condition of this Mortgage, Lender may, at its option, pay, perform or observe the same, and all payments made or costs or expenses incurred by Lender in connection therewith, shall be secured hereby and shall be, without demand, immediately repaid by Mortgagor to Lender with interest thereon at the default rate provided in the Note. Lender shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Lender is hereby empowered to enter and to authorize others to enter upon the Premises or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without thereby becoming liable to Mortgagor or any person in possession holding under Mortgagor. Mortgagor expressly acknowledges and agrees, however, that notwithstanding anything contained in this Paragraph 2.04 to the contrary, Lender shall not be obligated under this Paragraph 2.04 to incur any expense or to perform any act whatsoever.

**2.05. Receiver.** If an Event of Default shall have occurred, Lender, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right without notice and without regard to the occupancy or value of any security for the indebtedness secured hereby or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Premises and to collect and apply the rents, issues, profits and revenues thereof. The receiver shall have all of the rights and powers permitted under the laws of the State of Florida. Mortgagor shall pay to Lender upon demand all expenses, including receiver's fees, attorneys' fees, costs and agent's compensation, incurred pursuant to the provisions of this Paragraph 2.05; and all such expense shall be secured by this Mortgage.

**2.06. Application of Proceeds of Sale.** In the event a foreclosure sale of the Premises pursuant subparagraph (a) of Paragraph 2.06 hereof, the proceeds of said sale shall be applied, first, to the expenses of such sale and of all proceedings in connection therewith, including attorneys' fees as provided hereinabove, then to insurance premiums, liens, assessments, taxes and charges, including utility charges, advanced by Lender, then to accrued interest, then to payment of the outstanding principal balance of the indebtedness secured hereby, together with any prepayment premiums, fees, or charges herein or in the Note provided, and finally the remainder, if any, shall be paid to Mortgagor.

**2.07. Leases.** Lender, at its option, is authorized to foreclose this Mortgage subject to the rights of any tenants of the Premises, and the failure to make any such tenants parties to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be by Mortgagor, a defense to any proceedings instituted by Lender to collect the sums secured hereby.

**2.08. Discontinuance of Proceedings and Restoration of Parties.** In case Lender shall have proceeded to enforce any right, power or remedy under this Mortgage by foreclosure, entry or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then and in every such case Mortgagor and Lender shall be restored to their former positions and rights hereunder without waiver of any default and without novation, and all rights, powers and remedies of Lender shall continue as if no such proceeding had been taken.

**2.09. Remedies Cumulative.** No right, power or remedy conferred upon or reserved to Lender by this Mortgage is intended to be exclusive of any other right, power, or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

**2.10. Waiver.** (a) No delay or omission of Lender or of any holder of the Note to exercise any right, power or remedy accruing upon any Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such Default, or acquiescence therein; and every right, power and remedy given by this Mortgage to Lender may be exercised from time to time and as often as may be deemed expedient by Lender. No consent or waiver, express or implied, by Lender to or of any breach or Default by Mortgagor in the performance of the obligations thereof hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or Default in the performance of the same or any other obligations of Mortgagor hereunder. Failure on the part of Lender to complain of any act or failure to act or to declare an Event of Default, irrespective of how long such failure continues, shall not constitute a waiver by Lender of its rights hereunder or impair any rights, powers or remedies consequent on any breach or Default by Mortgagor. (b) If Lender (i) grants forbearance or an extension of time for the payment of any sums secured hereby; (ii) takes other or additional security for the payment of any sums secured hereby; (iii) waives or does not exercise any right granted herein or in the Note; (iv) releases any part of the Premises

from the lien of this Mortgage or otherwise changes any of the terms, covenants, conditions or agreements of the Note or this Mortgage; (v) consents to the filing of any map, plat or replat affecting the Premises; (vi) consents to the granting of any easements or other right affecting the Premises; or (vii) makes or consents to any agreement subordinating the lien hereof, any such act or omission shall not release, discharge, modify, change or affect the original liability under the Note, this Mortgage or any other obligation of Mortgagor or any subsequent purchaser of the Premises or any part thereof, or any maker, co-signer, endorser, surety or guarantor; nor shall any such act or omission preclude Lender from exercising any right, power, or privilege herein granted or intended to be granted in the event of any default then made or of any subsequent default. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Premises, Lender, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Premises or the Indebtedness secured hereby, or with reference to any of the terms, covenants, conditions or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing or discharging any liabilities, obligations or undertakings of Mortgagor.

**2.11. Suits to Protect the Premises.** Lender shall have power (a) to institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Premises by any acts which may be unlawful or any violation of this Mortgage, (b) to preserve or protect its interest in the Premises and in the rents, issues, profits and revenues arising therefrom, and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Lender.

**ARTICLE III**

**3.01. Environmental Matters.** To the best of Mortgagor's knowledge, no part of the Premises has been used or allowed to exist in violation of any local, state or federal law, ordinance, regulation, judicial or regulatory determination or principle of common law relating to pollution, protection of the environment or public health and safety (collectively "Environmental Laws"). Mortgagor covenants that no part of the Premises will hereafter be used or allowed to exist in violation of Environmental Laws. Mortgagor will notify Lender immediately in writing upon learning of any facts or circumstances related to the Premises that could lead to a violation of Environmental Laws. The Mortgagor(s), jointly and severally, agree to indemnify, defend and hold Lender harmless from and against any loss, liability, cost, injury, expense or damage (including damages to persons, property or the environment) that arise from or relate in any way to a violation of Environmental Laws, or the presence of any hazardous, toxic or petroleum-based substances, wastes or materials, as defined by or pursuant to Environmental Laws, on or under the Premises during the term of this Mortgage. Such indemnification obligation shall survive repayment of the indebtedness secured by this Mortgage, the cancellation of this Mortgage, the quit claim or release of all or any portion of the Premises from this Mortgage, and the transfer of the Premises, whether pursuant to foreclosure, deed in lieu of foreclosure or otherwise.

**3.02. Consents and Waivers if Mortgagor is Not Obligor.** If Mortgagor and Obligor are not identical persons or entities then Mortgagor agrees that Lender may take any or all of the following actions without notice to or consent of the Mortgagor and with or without consideration: (a) Allow or cause any indebtedness secured by this Mortgage to be incurred; (b) Obtain or release persons or entities that are primarily or secondarily obligated upon any indebtedness secured by this Mortgage; (c) Extend or renew any indebtedness secured by this Mortgage for any period whether or not longer than the original term; (d) Release, compromise or modify any indebtedness secured by this Mortgage; (e) Release or accept substitute collateral for the Lender's security interest or lien in any real or personal property other than the Premises which the Lender may at any time hold as collateral to secure repayment of any indebtedness secured by this Mortgage; and (f) Exercise its rights hereunder without having first resorted to any property securing repayment of any indebtedness secured by this Mortgage other than the Premises and without having first proceeded against or demanded payment from any person or entity primarily or secondarily obligated upon any indebtedness secured by this Mortgage.

This Mortgage shall inure to the benefit of and be binding upon Mortgagor and Lender and their respective legal representatives, successors and assigns. Whenever a reference is made in this Mortgage to Mortgagor or Lender such reference shall be deemed to include a reference to the legal representatives, successors and assigns of Mortgagor or Lender, whether so expressed or not.

All personal pronouns used in this Mortgage whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural, and vice versa. Titles and Articles are for convenience only and neither limit nor amplify the provisions of this Mortgage itself and all references herein to Articles, Paragraphs or subparagraphs thereof, shall refer to the corresponding Articles, Paragraphs or subparagraphs of this Mortgage unless specific reference is made to such Articles, Paragraphs or subparagraphs thereof of another document or instrument. The terms Mortgagor and Obligor shall be construed liberally to impose such obligation or obligations on each party to the extent such party is legally or equitably being bound by or discharging such obligation or obligations. If any provision of this Mortgage or the application thereof to any person or circumstances shall be invalid or unenforceable to any extent, the remainder of this Mortgage and the application of

such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

This Mortgage shall be interpreted, construed and enforced according to the laws of the State of Florida. In any action to enforce this Mortgage, Lender shall be entitled to recover its reasonable attorneys fees against Mortgagor.

All notices, demands and requests provided for or permitted to be given pursuant to this Mortgage must be in writing and shall be deemed to have been properly given or served if delivered in person or sent by United States certified mail, postage prepaid, return receipt requested, and addressed to the following addresses:

Lender:
SunTrust Bank
P.O. Box 26202
Richmond, VA 23260-6202

Mortgagor:
West Broward Church of God, Inc.
4760 North State Road 7
Lauderdale Lakes, FL 33319

All notices, demands and requests shall be deemed given, if not sooner received, on the third calendar day following the date upon which such notice is deposited in the United States mail. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to be receipt of the notice, demand or request sent. Mortgagor or Lender shall have the right from time to time and at any time during the term of this Mortgage to change their respective addresses by giving the other party hereto notice of such change of address.

**WAIVER OF TRIAL BY JURY. MORTGAGOR AND LENDER HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, AND IRREVOCABLY WAIVE THE RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION, WHETHER IN CONTRACT OR TORT, AT LAW OR IN EQUITY, BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE AND ANY OTHER DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ACCEPTING THIS MORTGAGE. FURTHER, MORTGAGOR HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF LENDER, NOR THE LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. NO REPRESENTATIVE OR AGENT OF THE LENDER, NOR LENDER'S COUNSEL HAS THE AUTHORITY TO WAIVE, CONDITION, OR MODIFY THIS PROVISION.**

THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $540,355.18, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

In Witness Whereof, Mortgagor has executed and delivered this Mortgage under seal as of the date first above written.

Signed, sealed, and delivered in the presence of:

_____
Witness Signature

Marcia Brooks
Name printed or typed

_____
Witness Signature

Marcia Brooks Lisa Ritchie
Name printed or typed

_____
Witness Signature

Marcia Brooks

West Broward Church of God, Inc.

By: _____
Cecil Crichlow, Director

And: _____
Ferdie Morgan, Treasurer Director

630361 (05/06)

_[signature]_ Lisa Ritchie
**Witness Signature**

_[signature]_ LISA RITCHIE
**Name printed or typed**

_[signature]_
**Witness Signature**

And: _[signature]_
Maurice A. Clarke, Sr., President Director

Marcia Brown
**Name printed or typed**

_[signature]_ Lisa Ritchie
**Witness Signature**

LISA RITCHIE
**Name printed or typed**

[This space intentionally left blank]

**(Individual)**
Jurisdiction: TAMARAC of BROWARD COUNTY
FLORIDA _____ To Wit:

I, DAVID M. GOLDSTEIN, a Notary Public in and for the above jurisdiction, do hereby certify that MESSIVERS CRICHLOW, MORGAN & CLARKE, party(ies) to the above instrument dated MAY 31, 2005, and hereto annexed, personally appeared before me in said Jurisdiction, MESSIVERS CRICHLOW, MORGAN & CLARKE being personally well-known to me (or produced DRIVERS LICENSES, C624-116-44-269-??? as identification) and being the person(s) who executed this instrument and acknowledged the same to be (his) (her) (their) act and deed. KC462-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
Given under my hand and seal this 1st day of JUNE, 2005   M625-249-54-375-0

_____
Notary Public

(Notary Seal)

_____
(Type or Print Name)
My Commission Expires: _____

**(Non-Individual)**
Jurisdiction: _____ of _____
_____ To Wit:

I, _____, a Notary Public in and for the above jurisdiction,
do hereby certify that _____, party to a
certain instrument dated _____, _____, and hereto annexed, personally appeared before me
in said Jurisdiction, _____ being personally well-known to me
(or produced _____ as identification) and acknowledged the
same to be the act and deed of _____, the party named within.

Given under my hand and seal this _____ day of _____, _____.

_____
Notary Public

_____
(Type or Print Name)
(Notary Seal)                              My Commission Expires: _____

[This space intentionally left blank]

## Exhibit A

Exhibit A to attached Commercial Mortgage and Security Agreement, dated May 31, 2005 by West Broward Church of God, Inc. ("Mortgagor").

Unit D of Headway Condominium, a Condominium, according to the The Declaration of Condominium recorded in O.R. Book 37696, Page 1080, and all exhibits and amendments thereof, Public Records of Broward County, Florida.

630361 (06/05)